PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

KENNETH GROSSMAN,
        *Defendant-Appellant.*

No. 03-4490

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CR-02-145-CCB)

Argued: December 3, 2004

Decided: February 23, 2005

Before WIDENER and WILKINSON, Circuit Judges,
and Norman K. MOON, United States District Judge
for the Western District of Virginia,
sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Widener and Judge Moon joined.

## COUNSEL

**ARGUED:** Kenneth Wendell Ravenell, SCHULMAN, TREEM,
KAMINKOW & GILDEN, P.A., Baltimore, Maryland, for Appellant.
Philip S. Jackson, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

**ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Balti-more, Maryland, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

A jury convicted Kenneth Grossman of possessing 500 or more grams of cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841 (2000). Grossman appeals his conviction by challenging the validity of the three search warrants that produced the evidence used against him. His chief contention is that there was no nexus between his alleged drug offenses and the homes to which he had access. Grossman argues that because he did not live at the resi-dences, the mere fact that he as a suspected drug dealer had access to them cannot establish probable cause absent some specific evi-dence that drugs were located therein.

We decline to require specific evidence of the existence of drugs in a residence where other facts sufficiently establish probable cause for the search. Probable cause is ultimately a matter of common sense. And here common sense indicated that contraband was likely to be located within the three dwellings. Because we also find Gross-man's other claims to be without merit, we affirm his conviction.

I.

In January 2002, Detective Keith Gladstone of the Baltimore City Police Department received information from a confidential source about the drug trafficking activity of Kenneth Grossman. The source revealed that Grossman was selling cocaine and keeping large quanti-ties of it in "stash houses" in northeast and west Baltimore. According to the source, Grossman transported drugs in either a Toyota or a Mercedes-Benz. The source recounted seeing Grossman in possession of cocaine within the past month. The source also related that Gross-man had previously been arrested for murder and drug violations.

Detective Gladstone was inclined to trust this confidential source because information previously provided by this person had proved

to be accurate. Specifically, information from this source had led to the arrest of ten people and the seizure of more than three kilograms of heroin and cocaine. Further, Detective Gladstone was able to confirm some of the source's information on Grossman. After running a criminal background check, Gladstone discovered that Grossman had indeed been convicted of manslaughter and felony drug offenses in the past.

Based on this information, Detective Gladstone decided to conduct a surveillance of Grossman. On January 24, 2002, he observed Grossman driving a gray Mercedes-Benz. By checking the license plate, Gladstone confirmed the car was indeed registered to Grossman. Grossman drove to 4123 Coleman Avenue in northeast Baltimore. According to Detective Gladstone, Grossman drove at least ten blocks out of his way, a driving pattern typical of those involved in drug-trafficking and familiar with police surveillance techniques.

Once at the Coleman Avenue residence, Detective Gladstone watched Grossman exit his vehicle, look around in all directions, and use a set of keys to open the front door. Forty minutes later, Grossman left the house and walked towards a different car, a Toyota. Before Grossman got into the Toyota, Detective Gladstone approached him and identified himself as a police officer.

In response to questions by Detective Gladstone, Grossman made several plainly false statements. He indicated that he had not just exited 4123 Coleman Street and that he had been driving the Toyota he was standing next to. Then, upon being confronted by the fact that Gladstone had seen him enter the house 40 minutes earlier, Grossman asserted that his girlfriend had let him in. He told Gladstone that he had no other way to access the house. After the detective told Grossman that he had seen him enter the residence with a key, Grossman admitted as much.

Detective Gladstone then asked if there was anyone in the residence who could verify Grossman's story. At that point, Grossman contradicted himself again by stating that he was the only one home. The detective asked if he could verify Grossman's assertion and, in response, Grossman let him into the house (presumably with the key he had denied owning moments before). Detective Gladstone then

asked for permission to search the house. Grossman responded that only his girlfriend could give the officer permission. Conveniently, Grossman said he did not have any way of contacting his girlfriend, and he actually did not even remember how to spell her name. Grossman explained, "I stay here, but that doesn't mean I live here."

At this point, Detective Gladstone sought and obtained a search warrant for 4123 Coleman Avenue. When the warrant was executed, the police seized approximately $10,000 and a loaded 9 millimeter handgun with an obliterated serial number. The officers also found documents addressed to Grossman and to "Michael Gregory" — an alias Grossman had used in the past. Some of these documents were addressed to an apartment at 3415 Gwynns Falls Parkway. The officers put Grossman under arrest and read him his Miranda rights. When asked, Grossman denied having keys to or knowing anyone at the Gwynns Falls address.

Detective Gladstone then went to the Gwynns Falls apartment. No one responded when he knocked on the door. Gladstone discovered, however, that one of Grossman's keys did in fact turn the lock. Detective Gladstone then went to seek a search warrant.

While Gladstone was gone, several police officers waited inside the apartment with Grossman. During that time, an individual — later identified to be Robert Paige — knocked on the door. He gave a false name to the officers and, at their request, wrote a brief statement indicating that he had come to see "Les and Ken." It was subsequently discovered that Mr. Paige had three prior drug convictions, and a handgun was found in his home.

Several hours later — now in the early morning hours of January 25 — police officers executed a search warrant at the Gwynns Falls residence. In the apartment they found over $12,000 and roughly 4.5 kilograms of cocaine. They also found a framed photograph of Grossman and an insurance policy issued in the name of "Michael Gregory" — Grossman's alias.

The final search relevant to Grossman's case occurred several days later, on January 28, 2002. Detective Gladstone obtained a warrant to search a house located at 729 North Milton Avenue in Baltimore. The

affidavit in support of the warrant describes the events surrounding the first two searches, and it also includes a statement from Leslie Lawson. Ms. Lawson is the named tenant of the apartment in Gwynns Falls Parkway. She admitted to sharing the apartment with Grossman, and she additionally disclosed that Grossman also stayed with his aunt at 729 North Milton Avenue.

When that North Milton Avenue house was searched, the police found plastic wrappers laced with cocaine residue, and personal papers bearing the names of Kenneth Grossman and Michael Gregory. These items were all found in a padlocked basement. A key to that lock was found on the same key ring that Detective Gladstone seized from Grossman on the night of January 24.

On March 26, 2002, Grossman was indicted on one count of possession with the intent to distribute 500 grams or more of cocaine. 21 U.S.C. § 841. He subsequently moved to suppress the evidence seized in all three of the above-mentioned searches. The trial court denied Grossman's motion, and the case proceeded to a jury trial on February 25, 2003.

The Government's evidence at trial largely recounted the events surrounding the three searches described above. In his defense, Grossman attempted to elicit testimony from an officer about the arrival of Robert Paige during the search of the Gwynns Falls apartment. While the government was willing to stipulate to the fact that Paige was present that night, it objected to the admission of two other pieces of evidence — Paige's criminal history and the fact that a handgun was later recovered from his house. The trial court ruled that this evidence had little probative value and would distract the jury. Thus, it was found to be inadmissible under Rule 403 of the Federal Rules of Evidence.

On February 26, 2003, the jury returned a guilty verdict. Grossman was sentenced to 135 months in prison and a four year term of supervised release. He now appeals.

## II.

Grossman challenges his conviction on several grounds. Most notably, he objects to the district court's denial of his motion to suppress

and its refusal to admit the proffered evidence about Robert Paige. We hold that the trial court did not err in either respect.

A.

First, we address Grossman's claim that his motion to suppress was wrongly denied. We review the factual findings underlying a motion to suppress for clear error, and we review the legal determinations de novo. *United States v. Perkins*, 363 F.3d 317, 320 (4th Cir. 2004). When such a motion is denied, we review the evidence in the light most favorable to the government. *Id.*

Grossman argues that the three search warrants relevant to his case are invalid because the magistrate judge who issued them failed to find a nexus between the suspected criminal activity and the specific residences to be searched. After reviewing all of the evidence that was before the magistrate judge on each of these three occasions, we cannot agree.

When issuing a warrant and making a probable cause determination, judges are to use a "totality of the circumstances analysis." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This standard "is not defined by bright lines and rigid boundaries. Instead, the standard allows a magistrate judge to review the facts and circumstances as a whole and make a common sense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 974 F.2d 480, 481, (4th Cir. 1992) (quoting *Gates*, 462 U.S. at 238). The magistrate judge's decision in this regard is one we review with great deference. *Id.*

Here, the evidence supporting the search warrants was more than sufficient to justify the magistrate judge's decisions. First, the application for the warrant to search 4125 Coleman Avenue contained an affidavit from Detective Gladstone which related the events as described above. Notably, this included information from a reliable informant who identified Grossman as a drug dealer, in addition to Gladstone's own observations of Grossman's suspicious and evasive behavior just outside the home's front door.

Next, as explained above, the second warrant application (for the Gwynns Falls apartment) was supported by items found during the first search. These items included a large sum of money, a firearm with an obliterated serial number, and documents (such as a cable bill) which listed the defendant's name (or known alias) at the Gwynns Falls address.

Finally, the third warrant application (for the 729 North Milton Avenue house) was supported by the 4.5 kilograms of cocaine found at the Gwynns Falls Apartment, and a statement from Grossman's co-tenant at that apartment indicating that Grossman occasionally stayed with his aunt at the Milton Avenue address. In light of all of these facts, we cannot agree with Grossman that there was no probable cause to search the three residences.

Our precedent provides guidance in this regard. In *United States v. Williams*, following a routine traffic stop, officers obtained a search warrant for the defendant's motel room. 974 F.2d 480 (4th Cir. 1992). The warrant was issued on the basis of an affidavit which established (1) that Williams had a criminal history involving drug trafficking, (2) that his car contained drug residue and a concealed knife, and (3) that he was carrying a receipt for a motel room. *Id.* at 480-81. Williams — like Grossman — argued that this evidence did not establish a probability that drugs would be found in his motel room. *Id.* at 481. He argued that nothing existed to link his past drug-related activities to his current motel room. We disagreed. *Id.*

Indeed, our cases indicate that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant "contains no factual assertions directly linking the items sought to the defendant's residence." *United States v. Servance*, 394 F.3d 222, 230 (4th Cir. 2005). *See also United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (agreeing with other circuits "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence").

The same logic controls here. Under these circumstances, it is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key. *See Williams*, 974 F.2d at 481. ("[T]he magistrate

must consider, in the light of all the surrounding circumstances, the likelihood that drug paraphernalia would be found in the motel room of a known drug dealer.").

Grossman says these cases are all inapposite since he does not reside in any of the three searched homes. Instead, Grossman says he merely stays as a guest in each residence for two to three days a week. In *Williams*, however, the drug dealer had been a motel guest for one week. *Id.* at 480-81. Although this was even less an established "residence" than Grossman's, we were undisturbed by the short duration of Williams's hotel stay, and upheld the search. Despite Grossman's protests, therefore, these searches are not invalid merely because he splits his time among several different homes.

As the trial court noted, these three searches are "not evaluat[ed] in a vacuum." The second and third affidavits each built upon the prior ones. Indeed, the cumulative effect of the evidence is quite telling. Given the confidential informant's reliable past, Grossman's criminal history, his suspicious explanations and behavior toward Detective Gladstone, his use of a key into the Coleman house, and the documentation and statements linking him to the other locations, we agree with the trial court that there was probable cause to search the three residences.[1]

## B.

Grossman also claims that his conviction is invalid because the trial court should have admitted evidence of Robert Paige's criminal history and possession of a firearm. We disagree.

The lower court correctly applied Federal Rule of Evidence 403 in this matter. That Rule provides:

---

[1]Grossman's heavy reliance on our decision in *United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993) is misplaced. The affidavits supporting the warrants in this case provide stronger support for probable cause than did the affidavit in *Lalor*. We found the affidavit in *Lalor* to be "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at [the relevant location]." *Id.* at 1582. By contrast, as explained above, the affidavits in this case were replete with evidence sufficient to establish probable cause.

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Because "Rule 403 judgments are preeminently the province of the trial courts" we review those decisions with great deference, leaving them undisturbed unless the court's "discretion has been plainly abused." *United States v. Love*, 134 F.3d 595, 603 (4th Cir. 1998)(citation omitted).

We find no abuse of discretion here. The probative value of Grossman's proffered evidence was weak. Mr. Paige was not a witness at trial, so there was no impeaching value in introducing his criminal history and handgun possession. Furthermore — as illustrated by the fact that he had to knock on the door and had no key of his own — Paige's connection to the apartment was minimal relative to Grossman's. The trial judge was correct in finding that the insignificant probative value of this evidence was easily outweighed by a desire to avoid confusing and distracting the jury. *See United States v. LaRouche*, 896 F.2d 815, 827 (4th Cir. 1990).

### III.

Because we find all of Grossman's grounds for appeal to be without merit, we affirm his conviction.[2]

*AFFIRMED*

---

[2]Grossman makes two additional arguments which we also find to be meritless. First, despite Grossman's contentions to the contrary, we are persuaded from our review of the record that his conviction was supported by sufficient evidence.

Second, we are convinced that the district court correctly responded to a jury question regarding the timing of Grossman's drug possession. We note that "the necessity, extent, and character of any supplemental instructions to the jury are matters within the sound discretion of the district court." *United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990).