**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-5141**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERT LEE HENDERSON, a/k/a Jessie James
Sykes,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Orangeburg.  Margaret B. Seymour, District
Judge.  (5:05-cr-00375-MBS-1)

Submitted:  June 25, 2007              Decided:  July 30, 2007

Before MICHAEL, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Michael Chesser, Aiken, South Carolina, for Appellant. Christopher
Todd Hagins, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Lee Henderson entered a conditional guilty plea to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1) (2000). The district court sentenced Henderson to 180 months' imprisonment. Henderson timely appealed.

Henderson's attorney has filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that, in his opinion, there are no meritorious issues for appeal, but questioning whether the district court erred in denying Henderson's motion to suppress evidence or in sentencing Henderson pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) (2000) ("ACCA"). Henderson submitted a pro se supplemental brief in which he raises many of the same issues counsel presented. For the reasons stated below, we affirm the district court's denial of Henderson's motion to suppress, as well as Henderson's sentence.

## I. Motion to Suppress

We review the district court's factual findings underlying a motion to suppress for clear error, and the district court's legal determinations de novo. United States v. Grossman, 400 F.3d 212, 216 (4th Cir. 2005). When a suppression motion has been denied, we review the evidence in the light most favorable to the government. Id.

After receiving a report of a broken-down mini-van on a highway, South Carolina State Trooper Larry Vanicek arrived on the scene to assist the motorists. Vanicek noticed two men, three women, and one child in the van. While speaking with Henderson, who was sitting in the driver's seat, Vanicek noticed a strong odor of marijuana emanating from the van. After asking Henderson for his driver's license, Vanicek asked Henderson to step outside of the vehicle. Vanicek asked Henderson whether he was driving and if his license was valid; Henderson responded that he had not been driving, but that his license was suspended. Informing Henderson that he detected marijuana, Vanicek asked Henderson if he had been smoking marijuana or had any narcotics on him. Henderson disclosed that he had smoked marijuana, but that he did not have any on his person.

Vanicek instructed Henderson to turn around so that Vanicek could perform a protective pat-down. Vanicek asked Henderson if he had any weapons or harmful objects on his person. At this point, Henderson told Vanicek there was marijuana in his coat pocket. After he located and seized the marijuana, Vanicek instructed Henderson to return to the van; Vanicek then called for back-up assistance in order to search the van.

After the local deputy arrived, Vanicek again asked Henderson to exit the van. Vanicek asked Henderson and the van owner's granddaughter, one of the women in the van, for consent to

search the van; both gave their consent to the search.  Before beginning to search the van, Vanicek again asked Henderson whether he had any weapons or harmful objects on his person, to which Henderson responded that he had a firearm in the waistband of his pants.  Henderson explained that the firearm had been in the van during the first search.  Vanicek located and seized the firearm and its ammunition.

Henderson moved to suppress the firearm, arguing it was seized in violation of the Fourth Amendment, and moved to suppress his statements to Vanicek, arguing they were obtained in contravention of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  After conducting a hearing on the issue, the district court denied Henderson's motion.  Henderson subsequently entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion.

On appeal, Henderson first maintains that, in requesting that he exit the van in the first instance, Vanicek violated Henderson's Fourth Amendment right to be free of unreasonable seizures.  Although Henderson makes much of the fact that Vanicek originally approached the van simply because he received a report of a disabled vehicle as opposed to pursuant to a traffic stop, Henderson neglects to consider that this was not why Vanicek requested that Henderson exit the vehicle. As Vanicek's report on the incident established, after approaching the vehicle, Vanicek

noticed a "strong odor" of marijuana emanating from the vehicle. Accordingly, Vanicek's request that Henderson, who had been sitting in the driver's seat, exit the vehicle was not predicated on the fact that the van was disabled, but on Vanicek's recognition that illegal drugs either were being, or had recently been, used. "[W]hen the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle." United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998). Accordingly, we conclude that Vanicek's request that Henderson exit the van did not violate the Fourth Amendment.

We further reject Henderson's contention that Vanicek's initial pat-down search was illegal because Vanicek lacked a reasonable belief that Henderson was armed. Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977), authorizes a police officer to frisk a vehicle's driver or occupant if there is a reasonable belief that they are armed and dangerous. As we have recognized, "[t]he indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer." Sakyi, 160 F.3d at 169. The noticeable presence of marijuana supported Vanicek's decision to frisk Henderson.[1]

---

[1]Building on his contention that the initial seizure and search were illegal, Henderson maintains that his continued detention pending arrival of Vanicek's back-up was likewise illegal. This argument fails, however, because the initial seizure and search were proper; thus, Vanicek had developed probable cause

Henderson also claims that the second search of his person was illegal because Vanicek had no reason to conduct another protective pat-down. Because the search was illegal, Henderson posits, the firearm seized during the course of that search should have been suppressed as fruit of the poisonous tree.

We reject this argument. Vanicek permitted Henderson to return to the van with the four other adults while awaiting the arrival of back-up assistance. Because Henderson could have armed himself or hidden contraband on his person during that time, it was reasonable for Vanicek to conduct a second protective pat-down search.

Lastly, Henderson maintains that the marijuana and the firearm should have been suppressed because the incriminating statements Henderson gave that led Vanicek to those items were obtained in violation of <u>Miranda</u>. Henderson concedes that <u>Miranda</u> warnings generally do not apply to routine traffic stops, but argues that, because Vanicek's initial contact with Henderson was not pursuant to a traffic stop, <u>Miranda</u> was triggered.

Police officers are "required to give <u>Miranda</u> warnings only where there has been such a restriction on a person's freedom as to render him in custody." <u>California v. Beheler</u>, 463 U.S. 1121, 1124 (1983) (internal quotations and citation omitted). "[T]he ultimate inquiry is simply whether there is a formal arrest

to support further detaining Henderson.

- 6 -

or restraint on freedom of movement of the degree associated with a formal arrest." Id. at 1125 (internal quotations and citation omitted).

Vanicek simply had no obligation to provide Miranda warnings before questioning Henderson regarding whether he had any weapons or harmful objects on his person. The uncontested documents reflecting the course of events demonstrate that, on both occasions Vanicek posed the challenged questions, Henderson was neither under arrest nor was his freedom restricted to a degree equivalent to arrest.[2] Accordingly, we conclude the district court properly denied Henderson's motion to suppress in its entirety.[3]

## II. **Armed Career Criminal**

Prior to sentencing, the probation officer prepared a pre-sentence report ("PSR"), in which he recommended sentencing Henderson pursuant to the ACCA. The probation officer concluded that Henderson had five prior convictions for violent felony offenses — burglaries — all of which were committed on separate

---

[2]Even if Miranda was in fact implicated, as the district court noted, there is a safety exception to the Miranda requirement. "[T]he need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." New York v. Quarles, 467 U.S. 649, 657 (1984). Vanicek's question twice posed to Henderson was well within the bounds of this exception.

[3]We have considered the other arguments raised in Henderson's pro se supplemental brief relevant to this issue and find them to be without merit.

occasions.  The probation officer cited Henderson's conviction for third-degree burglary of Hancock Buick on June 17, 1991, as well as his conviction for second-degree burglary of Hancock Buick on June 25, 1991 (collectively, "June 1991 burglaries").  The probation officer also detailed Henderson's convictions stemming from a series of burglaries committed in November 1996.  Those offenses included third-degree burglary of Astro Electric Company on November 15, 1996, and two counts of second-degree burglary for unlawfully entering two different buildings on November 14, 1996 (collectively, "November 1996 burglaries").

Henderson objected to the armed career criminal designation, arguing that the June 1991 burglaries and the November 1996 burglaries were inter-related, and thus not crimes committed on separate occasions.  The district court rejected this argument, finding that the June 1991 burglaries were "two separate incidents."  The district court similarly rejected Henderson's argument with regard to the November 1996 burglaries.

On appeal, Henderson restates his argument that he does not have the required three predicate felony convictions to support being sentenced under the ACCA.  A defendant with three prior convictions for violent felony offenses committed on separate occasions is subject to treatment as an armed career criminal.  See 18 U.S.C. § 924(e)(1); United States Sentencing Guidelines Manual § 4B1.4 (2005) ("USSG").  The definition of a "violent felony"

includes burglary.  18 U.S.C. § 924(e)(2)(B)(ii) (2000).  In Taylor v. United States, 495 U.S. 575, 598-99 (1990), the Supreme Court held that "burglary," for purposes of § 924(e), is limited to "generic" burglary, that is, the "unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime."

Though the statute does not define "committed on occasions different from one another[,]" we consider three factors in determining whether offenses occurred on the same occasion and thus should count as only one predicate offense: "whether the offenses arose in different geographic locations; whether the nature of the offenses was substantively different; and whether the offenses involved multiple victims or multiple criminal objectives."  United States v. Letterlough, 63 F.3d 332, 335-36 (4th Cir. 1995) (footnotes omitted).  A conviction is considered to have "occur[red] on occasions different from one another if each of the prior convictions arose out of a separate and distinct criminal episode."  Id. at 335 (internal quotations and citation omitted). In making this determination, we consider, among other factors, whether the time interval between the crimes underlying the convictions allowed the accused sufficient time to "make a conscious and knowing decision to engage in" subsequent criminal acts.  Id. at 337.  Separate offenses are not made related simply because the offenses were consolidated for sentencing or the

defendant received concurrent sentences. <u>United States v. Breckenridge</u>, 93 F.3d 132, 137-38 (4th Cir. 1996) (citations omitted); <u>United States v. Rivers</u>, 929 F.2d 136, 140 (4th Cir. 1991).

We reject Henderson's contention that his prior offenses were not separate instances of criminal conduct. Although the target of both of the June 1991 burglaries was the same, the date of conviction was the same, and Henderson's sentences were concurrent, the two criminal acts underlying those convictions occurred eight days apart from one another; thus, those criminal offenses cannot be said to have been committed on the same occasion. Henderson plainly made a "conscious and knowing decision" to engage in the second criminal act. <u>Letterlough</u>, 63 F.3d at 337. Both of these burglary convictions were properly counted.

With regard to the November 1996 burglaries, although it appears that Henderson committed these three crimes within a short time of one another, they each constitute a "separate and distinct criminal episode." <u>Id.</u> at 335. Each burglary involved a different target, in a different geographic location. In his travels between these locations, Henderson made conscious decisions to engage in another criminal act. Even if, as Henderson contends, the two burglaries committed on November 14 were committed "on the same occasion" such that they only count as one prior conviction,

Henderson nonetheless had three prior violent felony convictions and thus was properly sentenced pursuant to the ACCA.[4]

In accordance with <u>Anders</u>, we have reviewed the entire record in this case and have found no meritorious issues for appeal. Accordingly, we affirm Henderson's conviction and sentence. Moreover, we deny Henderson's motion to supplement his pro se supplemental brief. This court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

---

[4]We have considered Henderson's arguments relevant to the armed career criminal designation and find them without merit and requiring no substantive discussion.