**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 06-5209**

—————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHN LEWIS MASSEY,

Defendant - Appellant.

—————————

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill.  Cameron McGowan Currie, District
Judge.  (0:04-cr-00499)

—————————

Submitted:  October 1, 2007      Decided:  December 11, 2007

—————————

Before MOTZ and KING, Circuit Judges, and HAMILTON, Senior Circuit
Judge.

—————————

Affirmed by unpublished per curiam opinion.

—————————

Katherine E. Evatt, Assistant Federal Public Defender, Columbia,
South Carolina, for Appellant.  Reginald I. Lloyd, United States
Attorney, Stacey D. Haynes, Assistant United States Attorney,
Columbia, South Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial, John Lewis Massey was convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (2000). After being sentenced to 295 months' imprisonment, Massey timely noted an appeal. On appeal, Massey contests the denial of his motion to suppress the inculpatory statement he gave while in custody and the denial of his motion for a mistrial. For the reasons outlined below, we affirm.

Taken in the light most favorable to the government, Evans v. United States, 504 U.S. 255, 257 (1992), the evidence adduced at trial established the following facts. On September 27, 2002, at approximately 4:00 a.m., Massey approached the apartment building where Angela Patterson ("Angela"), Massey's ex-girlfriend, and Angela's mother, Mary Patterson ("Mary"), lived. After observing that Massey had a firearm, Angela called the police. Shortly thereafter, Mary witnessed Massey discharge the firearm.

Hearing the 911 call over the police radio, Richard Imboden, a security guard employed by the leasing company for the apartment complex, immediately responded. Imboden saw Massey running through the complex and, as he gave chase, observed Massey remove a gun from the waistband of his pants and throw it over a fence into a wooded area. Upon their arrival on the scene, Lancaster Police Department Officers Grant and McCowan searched the

wooded area and recovered the firearm approximately thirty minutes later.

While in custody at the police station, Massey asked to speak with Lancaster Police Department Detective Pat Parsons. Prior to speaking with Massey, Parsons used the Department's notice of rights and waiver of rights form ("waiver form") to advise Massey his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Massey indicated that he understood the rights as read to him by Parsons, was willing to waive those rights, and that he wished to talk with Parsons. Parsons gave Massey the waiver form so he could read the waiver provision; Massey signed the waiver form and Parsons witnessed the signature.

At Massey's request, Parsons wrote Massey's statement,[1] in which Massey admitted he owned the gun retrieved by the police. In signing the statement, Massey averred he had read the statement, and that it was true and correct to the best of his knowledge. Massey made no changes to the statement as written by Parsons.

Prior to the commencement of trial, Massey moved to suppress his statement. Massey maintained Parsons did not read Massey his Miranda rights and that Parsons did not provide Massey

---

[1]At Parsons' request, Massey initialed the statement where it indicated Parsons was writing the statement at Massey's direction.

the waiver form.[2] Massey further maintained that, though he signed the written statement, he did not know or understand its contents because he could not read or write. Massey further denied admitting the gun was his.

To refute Massey's contention that he was illiterate, the Government presented several letters Massey sent Angela from prison. Although Massey admitted signing and sending the letters, he denied writing them himself. According to Massey, he had dictated the letters to another inmate and later copied them so they would be in his own handwriting.

At the suppression hearing, Parsons testified that he read the entire waiver form aloud to Massey — including the waiver provision — and that Massey signed it. Although Parsons conceded he did not inquire as to Massey's ability to read or write, Parsons testified he gave Massey the statement to read and sign, which Massey did.

In denying Massey's motion, the district court found that Parsons informed Massey of his Miranda rights, that Massey understood those rights, and that Massey had knowingly and voluntarily waived them. Crediting Parsons' testimony that he read the waiver form to Massey, the district court relied on Massey's testimony that he understood documents read aloud to buttress the

_____

[2]Massey acknowledged that his signature appeared on the waiver form.

court's conclusion that the waiver was knowingly entered and that the statement was voluntarily given.  After his motion to suppress was denied, Massey proceeded to trial, where he was convicted of the charged offense.

Massey's first claim on appeal restates the argument raised and rejected by the district court at the suppression hearing: that, because he cannot read or write, Massey did not understand the waiver; thus, because he did not knowingly waive his Miranda rights, the inculpatory statement was not voluntary.[3]  This court reviews the district court's factual findings underlying the adjudication of a motion to suppress for clear error, and the district court's legal determinations de novo.  United States v. Grossman, 400 F.3d 212, 216 (4th Cir. 2005).  When a suppression motion has been denied, this court reviews the evidence in the light most favorable to the Government.  Id.

Massey's challenge to the denial of his motion to suppress is entirely predicated on his position that the district court erred in reaching its credibility determinations.  However, this court does not review the factfinder's credibility determinations.  Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 56 F.3d 556, 567 (4th Cir. 1995); see also United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).  Given that factual

---

[3]Massey does not contend that the waiver form was inadequate, and even a cursory review thereof reveals that it conformed to the dictates of Miranda.

issues involved in a motion to suppress are reviewed for clear error and that this court will not second-guess the district court's credibility determination, this claim fails.

Massey next challenges the district court's denial of his motion for a mistrial. Massey's motion was predicated on Angela's testimony on cross-examination regarding how certain she was that Massey was carrying a gun. The challenged testimony was as follows:

```
Q:    It was a silver gun with a brown handle?
A:    Uh-huh (affirmative response)
Q:    Did you notice anything else about the gun?
A:    Un-huh (negative response).  John carried numerous guns,
      anyway.
```

Defense counsel immediately objected; the district court struck the last statement and instructed the jury that it could not be considered as evidence.

Despite the limiting instruction, defense counsel moved for a mistrial. Acknowledging the improper purpose that likely prompted the statement, the district court nonetheless denied the motion, noting it would give a further curative instruction. When the jury returned, the district court issued the following instruction:

> Ladies and gentlemen of the jury, the only issue in this case is whether or not the government can prove beyond a reasonable doubt whether or not Mr. Massey possessed a firearm and ammunition on September 27th, 2002. I am striking and have stricken and want to make sure you understand that the statement volunteered by Ms. Patterson during her testimony before the break was inadmissible. Even though you heard it, you may not

consider it at all and it may not be part of your deliberations at all. It was improper . . . . You may not consider this in deciding what the facts are in this case in any manner whatsoever.

On appeal, Massey contends that, though the district court properly struck this testimony from the record, it erred in denying the motion for a mistrial because this improper testimony went to "the only critical fact at trial, which was not conclusively proven by the remaining evidence."

We review the denial of a motion for a mistrial for abuse of discretion. United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997). "In order for the trial court's ruling to constitute such an abuse of discretion, the defendant must show prejudice; no prejudice exists, however, if the jury could make individual guilt determinations by following the court's cautionary instructions." United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995) (internal citation omitted). Reversal is required only if there is a clear abuse of discretion and a "'reasonable possibility that the jury's verdict was influenced by the material that improperly came before it.'" United States v. Seeright, 978 F.2d 842, 849 (4th Cir. 1992) (quoting United States v. Barnes, 747 F.2d 246, 250 (4th Cir. 1984)).

We conclude the mere utterance of the statement did not require that the district court declare a mistrial. The statement was an isolated remark that was stricken immediately after it was offered, was not repeated or referenced by the Government, and was

the subject of an appropriate cautionary instruction.  Moreover, in light of the overwhelming evidence of Massey's guilt, it cannot reasonably be contended that, but for this statement, the jury would have acquitted Massey.  Through the testimony of the three eye-witnesses — Angela, Mary, and Imboden — the Government conclusively established Massey's possession of the firearm on the morning of September 27, 2002.  Because the Government presented ample evidence of Massey's guilt, the district court properly denied the motion for a mistrial.[4]

Accordingly, we affirm Massey's conviction.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[4]Massey analogizes his case to United States v. Tate, 715 F.2d 864 (4th Cir. 1983), in which this court vacated the defendant's conviction because the district court improperly admitted evidence regarding the defendant's prior possession of a firearm.  Id. at 865-66.

The circumstances here, however, are readily distinguishable from Tate.  First and foremost, unlike in Tate where the evidence of the defendant's prior bad act was admitted, the district court here struck the challenged statement from the record.  Further, the district court twice instructed the jury that it could not consider the statement as part of the body of evidence.  As this court has repeatedly held, "[t]he law assumes that, except in extraordinary circumstances, jurors follow a court's instructions."  Jones v. Polk, 401 F.3d 257, 264 (4th Cir. 2005).  Tate simply does not afford Massey any relief.