**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4025**

———————

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

    v.

UMBERTO ALMAZAN RUBIO,

        Defendant-Appellant.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:12-cr-00191-CCE-1)

———————

Submitted: July 9, 2013        Decided: July 24, 2013

———————

Before AGEE, GREGORY, and FLOYD, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Louis C. Allen, III, Federal Public Defender, Greensboro, North Carolina, Mireille P. Clough, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Winston-Salem, North Carolina, for Appellant. Ripley Rand, United States Attorney, Michael F. Joseph, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Umberto Almazan Rubio ("Rubio") pled guilty to possession of a firearm by an illegal alien in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). The district court imposed a within-Guidelines sentence of 24 months' imprisonment. Rubio's guilty plea was conditioned on his ability to appeal the denial of his motion to suppress the evidence seized pursuant to a search warrant. On appeal, he contends that the district court erred in denying his motion to suppress because the search warrant application included stale information. He also contends that his sentence is unreasonable because it is greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). For the reasons that follow, we affirm the judgment of the district court.

I.

On April 25, 2012, deputies of the Guilford County, North Carolina Sheriff's Department executed a search warrant looking for evidence of cockfighting at 5101 Watlington Road, Lot A, Greensboro, North Carolina, a residence known to have been used for cockfighting in 2009. The warrant also allowed a search of the persons of Rubio, Jose Homar Olvera Ramos ("Ramos") (who is related to Rubio's wife), and their vehicles.

The search warrant application included the affidavit of Deputy Sheriff S.D. Jarrell ("Deputy Jarrell"), a nine-year veteran of the Guilford County Sheriff's Department. As part of his affidavit, Deputy Jarrell set forth the fact of a prior search at the Watlington Road residence on May 14, 2009, and that Ramos, who was specifically listed in the search warrant at issue in this case, had been indicted on October 5, 2009, for cockfighting. Deputy Jarrell noted that Ramos had entered a guilty plea to misdemeanor animal cruelty on February 14, 2011, and been placed on probation for eighteen months. One condition of Ramos's probation was that he not possess any chickens.

Deputy Jarrell's affidavit also chronicled various law enforcement contacts at the Watlington Road residence throughout 2011 and 2012, during which several officers had visited the premises and observed signs of chickens and roosters being raised for cockfighting:

- On July 1, 2011, Officer Garrard of Guilford County Animal Control visited the premises to determine if a dog had been vaccinated for rabies. While on the premises, she observed over 150 roosters and chickens, some of which had combs trimmed, spurs cut, and were tethered.

- On December 2, 2011, Deputy Jarrell was at the residence to serve an unrelated warrant and observed chickens. No action was taken, however, because at that time, Deputy

3

Jarrell was unaware that a resident of the premises was on probation and not allowed to have chickens.

- On March 21, 2012, Guilford County Deputy Crisp visited the residence to investigate a noise complaint and observed at least one hundred roosters on the premises.

- On March 26, 2012, Guilford County Deputy Murphy observed a tethered rooster with a trimmed comb and wattle on the premises.

- On April 1, 2012, officers were again called to the residence in reference to a noise disturbance. The complainant stated that there were chickens and roosters at the residence continually making noise.

Deputy Jarrell concluded the search warrant application with a summary of the events that occurred nine days before the search warrant was issued and executed:

> On April 16, 2012[,] yet another noise disturbance was called in for 5101 Watlington Rd, Lot A, Greensboro. This applicant was the responding officer. When this applicant pulled into the driveway, Jose Omar Olvera Ramos' Beetle, tag ADY6883, was parked in the driveway. This applicant spoke with Umberto Rubio's wife, Maralee Mar, and explained that this applicant had received a noise complaint. Mrs. Mar stated that it was time for her to feed the birds, that's why they were making so much noise.
>
> This applicant walked over to where the chicken coop was and observed a rooster that had its comb and wattle cut. This applicant also observed two wooden anchors in the

4

> ground with tether straps attached to same. These wooden anchors are used to tether the roosters. In the make shift fence, this applicant observed a clear, dark colored bottle that appeared to be an antiseptic bottle.
>
> All of the items combined are indicative that the residents are training the roosters for fighting. Mrs. Mar stated to me that her husband enjoyed cockfighting and that he and her brother-in-law, Jose Omar Olvera Ramos, just got back from selling approximately 60 roosters and chickens in Mexico over the weekend. There were approximately eighty (80) roosters, hens, cockerels, and chicks.

(J.A. 79.)

When the search warrant was executed on April 25, 2012, officers found three firearms in the residence, as well as two identification documents with Rubio's photograph. It was later determined that one of the identification cards was a counterfeit United States Alien Resident Registration Card.

Rubio was arrested and transported to the Guilford County Sheriff's Department, where he was advised of his Miranda rights in Spanish. Rubio waived his rights and agreed to speak with officers. He admitted ownership of two of the three firearms. Rubio was determined to be a native and citizen of Mexico, and present in the United States without having been admitted or having obtained the permission of the Attorney General or the Director of Homeland Security.

5

On May 29, 2012, Rubio was indicted on one count of possession of a firearm by an alien, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2), and one count of possession of a forged and counterfeit alien registration receipt card, in violation of 18 U.S.C. § 1546(a). He subsequently moved to suppress the evidence seized in the April 25, 2012 search, contending that the search warrant lacked probable cause because it contained stale information from 2009. The United States District Court for the Middle District of North Carolina denied Rubio's motion, finding that the warrant was supported by probable cause and there was no staleness because the affidavit included information that was obtained "just a few days before the search warrant was sought." (J.A. 72.)

On August 15, 2012, Rubio entered a conditional guilty plea on the count of possession of a firearm by an alien, but reserved the right to appeal the denial of his motion to suppress.

Rubio appeared for sentencing on November 27, 2012. His advisory Guidelines range was 24 to 30 months' imprisonment, and he requested a sentence below the Guidelines range, arguing that his early admission of wrongdoing, lack of criminal record, family needs, and passive possession of the firearms warranted a below-Guidelines sentence. The district court denied Rubio's

6

request and imposed a sentence at the low end of the Guidelines range, explaining as follows:

> I've considered the argument that a sentence below the guideline range might be appropriate because of Mr. Rubio's lack of criminal record, his family and work stability, the passive possession of the firearm and his early statement of responsibility to law enforcement. Certainly those factors are important. I think they do justify a sentence at the low end of the guideline range, but because of the number of guns, I don't know that – I don't feel comfortable going below the guideline range.
>
> It is obviously a serious offense, and given that he did admit to personally possessing two of the guns, and there was a third one there, I think that a sentence within the guideline range is needed to reflect the seriousness of the offense.

(J.A. 149–50.) Rubio was sentenced to 24 months' imprisonment and a two-year term of supervised release.

He now appeals, and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II.

Rubio raises two central issues on appeal. First, Rubio contends that the district court erred in denying his motion to suppress because the affidavit in support of the search warrant contained stale information. Second, Rubio argues that his sentence is unreasonable because it is greater than necessary to

7

accomplish the goals of 18 U.S.C. § 3553(a).  We hold that the district court did not err in either respect.

## A.

We first address Rubio's claim that his motion to suppress was wrongly denied on grounds of staleness.  We review the factual findings underlying a motion to suppress ruling for clear error, and the legal determinations de novo.  United States v. Grossman, 400 F.3d 212, 216 (4th Cir. 2005).  "When such a motion is denied, we review the evidence in the light most favorable to the government."  Id.

Rubio argues that the search warrant relevant to his case is invalid because the supporting affidavit included stale information.  Rubio specifically references the dates of May 14, 2009 (prior search at the Watlington Road residence), and October 5, 2009 (indictment of Ramos for cockfighting), contending that such events occurred nearly three years before the execution of the search warrant, and that the warrant thus "lacked any information of cockfighting close to [its] execution." (Appellant's Br. 7.)

The district court rightly rejected Rubio's staleness argument.  As we have made clear, "the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of

8

the affidavit." United States v. Rhynes, 196 F.3d 207, 234 (4th Cir. 1999) (brackets omitted); see also United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998) (staleness not measured "solely by counting the days on a calendar"). "Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." United States v. Farmer, 370 F.3d 435, 439 (4th Cir. 2004) (quoting Rhynes, 196 F.3d at 234).

Here, under the totality of the circumstances, there was ample evidence to support a finding of probable cause. Deputy Jarrell's supporting affidavit referenced the May 2009 search warrant and the October 2009 arrest of Ramos and his subsequent conviction for animal cruelty, which reflected the continuing nature of alleged criminal activity at the Watlington Road residence. As recounted in the search warrant affidavit, on several occasions from July 2011 until April 2012, officers were repeatedly dispatched to the Watlington Road residence to investigate noise complaints related to the numerous roosters, chickens, and other fowl that were kept there. The officers detailed their observations of roosters that had their combs and wattles cut, wooden stakes in the ground which were used to tether the roosters, and bottles that contained antiseptic for the birds. Most significantly, Deputy Jarrell responded to a

noise complaint on April 16, 2012 – nine days prior to the execution of the search warrant – and observed a rooster that had its comb and wattle cut, wooden anchors with tether straps, and an antiseptic bottle, items "all [of which] combined are indicative [of] training the roosters for fighting." (J.A. 79); see Emery v. Holmes, 824 F.2d 143, 149 (1st Cir. 1987) ("Where recent information corroborates otherwise stale information, probable cause may be found."). In light of all of these facts, we cannot agree with Rubio that there was insufficient probable cause to search the Watlington Road residence. We therefore conclude that the district court did not err in denying Rubio's motion to suppress.

B.

Rubio also contends that the district court should have granted his request for a sentence below the advisory Guidelines range because he presented mitigating evidence demonstrating that a sentence within the advisory Guidelines range was greater than necessary. We review Rubio's sentence under a deferential abuse-of-discretion standard, see Gall v. United States, 552 U.S. 38, 51 (2007), for procedural and substantive reasonableness. Id.; United States v. Lynn, 592 F.3d 572, 575 (4th Cir. 2010). If a sentence is within the appropriate Sentencing Guidelines range, we presume that the sentence is

10

reasonable.  United States v. Mendoza-Mendoza, 597 F.3d 212, 217 (4th Cir. 2010).  Such a presumption is rebutted only by showing "that the sentence is unreasonable when measured against the [18 U.S.C.] § 3553(a) factors."  United States v. Montes-Pineda, 445 F.3d 375, 379 (4th Cir. 2006).

We conclude that the district court committed neither procedural nor substantive error in sentencing.  The court accurately calculated and considered Rubio's Guidelines range, heard argument from counsel for a sentence below the advisory Guidelines range, and gave Rubio an opportunity to address the court.  The court fully considered all of the reasons Rubio offered in support of his argument for a below-Guidelines sentence — his early admission of wrongdoing, lack of criminal record, family needs, and passive possession of the firearms — but explained that the within-Guidelines sentence was warranted in light of the seriousness of the offense.  On appeal, counsel does not offer any grounds to rebut the presumption that Rubio's within-Guidelines sentence is substantively reasonable, and our review reveals none.  The district court thus did not abuse its discretion in sentencing Rubio.

## III.

For the foregoing reasons, we affirm the judgment of the district court.  We dispense with oral argument because the

11

facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

AFFIRMED