**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Vincent Jay LETTERLOUGH, Defendant–Appellant.**

**No. 94–5571.**

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1995.

Decided Aug. 28, 1995.

---

**ARGUED:** Richard Allen Elmore, Pfaff, Elmore & Hayes, Greensboro, NC, for appellant. Michael Francis Joseph, Asst. U.S. Atty., Greensboro, NC, for appellee. **ON BRIEF:** Walter C. Holton, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge HAMILTON and Judge LUTTIG joined.

## OPINION

WILLIAMS, Circuit Judge:

This case presents the straightforward question of whether Vincent Letterlough committed three crimes "on occasions different from one another" under the Armed Career Criminal Act (ACCA), 18 U.S.C.A. § 924(e)(1) (West Supp.1995),[1] as implemented through U.S.S.G.[2] § 4B1.4. We affirm the armed career criminal enhancement imposed by the district court, and in doing so,

---

1. We recently upheld the constitutionality of the ACCA on Commerce Clause, Equal Protection Clause, Due Process Clause, Double Jeopardy Clause, "Ex Post Facto" Clause, and Eighth Amendment grounds. *See United States v. Presley*, 52 F.3d 64, 67–68 (4th Cir.1995).

2. United States Sentencing Commission, *Guidelines Manual* (Nov. 1993).

join our sister circuits to conclude that the occasion test of § 924(e)(1) is satisfied so long as each charged crime is a "separate and distinct criminal episode."

## I.

The facts of this case are not in dispute. After an acquaintance purchased a firearm for Letterlough, she realized that Letterlough was a convicted felon. This caused the acquaintance to have second thoughts and turn herself in to the police. As a result, Letterlough was indicted for and pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C.A. § 922(g) (West Supp. 1995) on November 10, 1993. During sentencing, the Probation Officer recommended considering Letterlough an Armed Career Criminal under the ACCA's statutory sentencing enhancement, over the objection of the Government, based on the following three drug convictions: (1) a conviction for selling a single dose of crack cocaine to an undercover police officer for $20 at 8:35 p.m. on July 31, 1990, when Letterlough was 17 years old; (2) a conviction for selling another single dose of crack cocaine at the same location to the same police officer on the same day in July 1990 at 10:15 p.m.; and (3) a conviction for the felony sale of cocaine on March 29, 1990. Letterlough challenged the application of the armed career criminal statute to him, on the basis that the two drug sales on July 31, 1990, were not "committed on occasions different from one another" as required by § 924(e)(1). Because they were not committed on occasions different from one another, Letterlough argued that he did not possess the three requisite convictions necessary for the enhancement. The Government joined in Letterlough's objection.

Nevertheless, on July 21, 1994, the district court denied Letterlough's and the Government's objections to the enhancement, and, taking into account Letterlough's substantial assistance, sentenced Letterlough to 84 months imprisonment, 5 years supervised re-

lease, and a special assessment.[3] Letterlough timely filed a notice of appeal.

## II.

■ As stated above, the sole question raised in this appeal is whether Letterlough's two July 31, 1990, convictions were "committed on occasions different from one another." Because this is a question of statutory interpretation, we review the district court's conclusions *de novo.* *See United States v. Brady,* 988 F.2d 664, 666 (6th Cir.) (en banc) ("Brady presents a legal question concerning the interpretation of a statute, a matter we review de novo."), *cert. denied,* — U.S. —, 114 S.Ct. 166, 126 L.Ed.2d 126 (1993).

■ The ACCA is a sentencing enhancement intended to punish recidivism. *See United States v. Towne,* 870 F.2d 880, 890–91 (2d Cir.) ("It seems quite clear that this section of the Act was intended to target recidivists."), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989); *Brady,* 988 F.2d at 670 (Jones, J., dissenting) ("With the Armed Career Criminal Act, Congress enacted legislation which imposes a mandatory minimum sentence for recidivists.") (citation omitted). In accord with this purpose, when a defendant is convicted of violating 18 U.S.C. § 922(g), the ACCA directs the district court to look at the defendant's criminal history, and, if appropriate, increase his sentence from the otherwise normal ten year maximum under 18 U.S.C. § 924(a)(2) to within a mandatory minimum range of fifteen years to life. 18 U.S.C. § 924(e)(1) & (2). A defendant is eligible for the enhancement if, prior to his conviction for violating § 922(g), he "has three previous convictions ... for a violent felony or serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

■ When Congress originally enacted § 924(e)(1), the phrase "committed on occasions different from one another" was not part of § 924(e)(1). *United States v. Blackwood,* 913 F.2d 139, 146 (4th Cir.1990); *see*

---

**3.** Without the substantial assistance, Letterlough would have been subject to a mandatory minimum penalty under the ACCA of at least 15 years in prison, resulting in a guidelines range of 180–

210 months. Without the enhancement or the departure for substantial assistance, Letterlough's maximum sentence would have been 96 months.

18 U.S.C. app. § 1202(a) (repealed and recodified in 1986 at 18 U.S.C. § 924). The Eighth Circuit's decision in *United States v. Petty*[4] changed that. In *Petty*, Petty's criminal history consisted of six criminal convictions for robbing six people simultaneously. Petty argued that because all of his convictions were obtained through one simultaneous act, the enhancement should not apply. The Eighth Circuit decided that the requisite three criminal convictions for the enhancement were satisfied because Petty could have been prosecuted under separate indictments notwithstanding the fact that the six convictions arose from the same act. *Id.* at 1159–60. The Supreme Court granted certiorari, but before argument, the Solicitor General changed the government's position, claiming that "Congress intended the statute to enhance punishment for multiple criminal episodes that were distinct in time, as opposed to multiple convictions arising out of a single criminal episode." *Blackwood,* 913 F.2d at 146 (discussing *Petty* and the legislative history of the ACCA). The Supreme Court remanded the case for reconsideration in light of the Solicitor General's changed position. *Petty v. United States,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987).

In response to this controversy, in 1988, Congress added the phrase above to § 924(e)(1) to require that the three predicate offenses take place "on occasions different from one another." *See Blackwood,* 913 F.2d at 146. Obviously, this amendment encompasses the *Petty* situation—where the defendant commits multiple criminal acts simultaneously. However, the plain language of the statute indicates that Congress intended a broader meaning. Congress's use of the

word "occasion" implies that it intended the offenses underlying the predicate convictions to be distinct from one another. "Occasion" has been defined as "a particular occurrence ... a particular time at which something takes place." *Webster's Third New International Dictionary Unabridged* 1560 (1986). This common sense definition tells us that Congress intended to include within the scope of the ACCA only those predicate offenses that can be isolated with a beginning and an end—ones that constitute an occurrence unto themselves.

Reflecting the importance of defining each conviction as a separate event, almost every circuit[5] in the country applies the following test to determine whether the ACCA applies to a defendant's prior crimes: Convictions occur on occasions different from one another "if each of the prior convictions arose out of a '*separate and distinct criminal* episode.'" *United States v. Hudspeth,* 42 F.3d 1015, 1019 (7th Cir.1994) (en banc) (collecting cases) (emphasis in original) (citation omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). We, too, believe that this formulation properly articulates the need for self-contained predicate offenses under § 924(e)(1), and adopt it as our own.

■ However, although this definition may be clear, the factual permutations surrounding the ACCA tend to create havoc. As a result, courts have applied a multiplicity of factors to determine when more than one conviction constitutes a separate and distinct criminal episode. For example, courts have asked whether the offenses arose in different geographic locations;[6] whether the nature of

---

**4.** 798 F.2d 1157 (8th Cir.1986), *vacated and remanded,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810, *rev'd on remand,* 828 F.2d 2 (8th Cir.1987), *cert. denied,* 486 U.S. 1057, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988).

**5.** After our decision, the D.C. Circuit will be the only circuit with criminal jurisdiction that has not confronted this question at all. As noted in *Hudspeth,* "[the 7th] Circuit has joined nine other Circuits, including the First, Second, Third, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh," in adopting this definition. *Id.*

**6.** *See United States v. Harris,* 964 F.2d 1234, 1237 (1st Cir.1992) (Breyer, C.J.) (finding that two assault and battery offenses occurred on different occasions because of the different locales of commission and because the crimes were two months apart); *United States v. Tisdale,* 921 F.2d 1095, 1099 (10th Cir.1990) (finding that the robbery of two businesses in the same mall on the same night constituted different occasions in part because "the defendant's burglaries did not occur at the same location"), *cert. denied,* 502 U.S. 986, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991).

the offenses was substantively different;[7] and whether the offenses involved multiple victims[8] or multiple criminal objectives.[9] For instance, in *United States v. Ressler*, 54 F.3d 257, 260 (5th Cir.1995), the defendant's criminal acts occurred within a span of several hours; however, they were different crimes (burglary and assault) committed against different victims. As a result, the court determined that the acts were separate and distinct episodes. *Id.* Courts have applied these factors independently, or in conjunction, to decide that a defendant's similar offenses are actually separate and distinct from one another.[10] In essence, if any one of the factors has a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes.

Several courts have addressed situations, similar to the instant case, where defendants have claimed that their prior criminal acts took place on one occasion because they were committed within an extremely short time span. In *Hudspeth*, the Seventh Circuit, en banc, recently concluded that the defendant was eligible for the Armed Career Criminal enhancement when his three previous felonies were committed as one continuous criminal scheme that took place over the course of an hour. 42 F.3d at 1022. Almost a decade before his conviction under § 922(g), Hudspeth and several others broke into a donut shop in a mall through its back door, burglarized it, then broke through the donut shop's wall to the adjacent store, a dry cleaners, and then broke into the next adjacent store, an insurance company. The Seventh Circuit affirmed the district court's application of the ACCA, using these three burglaries as predicate convictions. The court held that the

enhancement should be applied against "criminals who commit separate crimes against different individuals while on a spree, within a short period of time, provided that the perpetrator had the opportunity to cease and desist from his criminal actions." *Id.* at 1020.

In *United States v. Antonie*, 953 F.2d 496 (9th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992), the Ninth Circuit affirmed an enhancement under similar circumstances. As succinctly stated by the court, "Antonie robbed a 7–11 market in Downy, California at 9:45 p.m. and a Winchell's Donut House in Bellflower, California at 10:25 p.m." *Id.* at 498. Based on these facts, the district court refused to apply the enhancement, the government appealed, and the Ninth Circuit reversed. The court, relying on precedent from its interpretation of § 924(e)(1)'s predecessor statute, held that the enhancement was appropriate so long as the predicate crimes were "distinct in time." *Id.* (quoting *United States v. Wicks*, 833 F.2d 192, 194 (9th Cir.1987), *cert. denied* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988)).

Particularly instructive because of its similar facts is *United States v. Washington*, 898 F.2d 439 (5th Cir.), *cert. denied*, 498 U.S. 842, 111 S.Ct. 122, 112 L.Ed.2d 91 (1990), where the Fifth Circuit affirmed the § 924(e)(1) enhancement. Washington had committed two robberies several years before being convicted under § 922(g). First, he robbed a convenience store in Jackson, Mississippi, on October 13, 1979, at approximately 11:30 p.m. Several hours later, he returned to the very same store and robbed it again. In short, he "committed [his two robberies] within a period of a few hours against the same victim at

---

7. *See United States v. Schieman*, 894 F.2d 909, 913 (7th Cir.) (enhancing where the defendant committed a burglary and then, after having completed the burglary, committed an assault), *cert. denied*, 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990).

8. *See id.* (noting the identity of the victims—the defendant burglarized one store and then, after leaving the premises, assaulted a police officer—to support the enhancement).

9. *See United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir.1993) (finding that defendant's motiva-

tion for perpetrating two assaults—stabbing one person as a result of an argument, and then, 25 minutes later, shooting another who had called the police—was relevant consideration), *cert. denied*, —— U.S. ——, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994).

10. *See generally* Jondavid S. DeLong, Annotation, *What Constitutes Three Previous Convictions for Offenses Committed on Occasions Different from One Another for Purpose of Sentence Enhancement Under Armed Career Criminal Act*, 123 A.L.R.Fed. 397 (1995).

the same location." *Id.* at 440. Nevertheless, the court concluded: "Washington's two robberies were separate criminal episodes because he committed the first, completed it, and escaped; then, after a few hours of no criminal activity, Washington returned to commit the second crime." *Id.* at 442. The court held that "[w]here ... multiple offenses are not part of a continuous course of conduct, they cannot be said to constitute either a criminal spree or a single criminal transaction for purposes of section 924(e)," *id.* at 441, therefore, an ACCA enhancement was appropriate. We agree with this analysis, and believe that it reinforces the lessons of *Hudspeth* and *Antonie.*

Letterlough argues that we should consider his two sales "a continuous drug transaction." Brief of Appellant at 10. We disagree. In our opinion, Letterlough's two drug sales, although perhaps occurring pursuant to a master plan to sell crack cocaine as a business venture, can hardly be said to constitute a single occasion. If we went into a drug store to purchase aspirin, the transaction would be complete once we left the store with the pills—even though the drug store was still open for business. Similarly, each of Letterlough's drug sales was a complete and final transaction, and therefore, an independent offense. Once Letterlough sold the first dose, as far as we know, he engaged in no criminal activity for over an hour and a half, at which point he chose to engage in another separate and distinct criminal transaction. The time separating the offenses was ample to give Letterlough the opportunity to make a conscious and knowing decision to engage in another drug sale. Unlike the situation where the defendant assaults and kidnaps someone in an extended attack, *Towne,* 870 F.2d at 891, Letterlough's two sales were "not part of a continuous course of [criminal] conduct." *Washington,* 898 F.2d at 441.

We also cannot conclude that these two sales constituted a single occasion because the undercover officer to whom the drugs were sold chose not to arrest Letterlough after the first sale. Although Letterlough would like to assign some culpability for the second sale to the undercover officer who purchased the drugs, the responsibility for the crime falls squarely on Letterlough. We cannot disregard the additional criminal activity simply because the government allowed Letterlough to engage in it. To do so would force officers to arrest all evildoers as soon as they see a crime committed; it would destroy large scale police "sting" operations and undercover infiltrations, as were present in this case.

In short, we find Letterlough's two July 1990 convictions did not arise from a continuous course of criminal conduct; rather, they constituted two complete and discrete commercial transactions and, therefore, two separate and distinct episodes. Accordingly, because Letterlough's three convictions were committed "on occasions different from one another," his sentence was properly enhanced.

*AFFIRMED.*