**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 13-7384**

─────────────

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

    v.

SAMUEL ROBERT CONRAD, III,

               Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, District Judge.  (1:06-cr-00040-JPJ-PMS-1)

─────────────

Argued: October 30, 2014         Decided: January 13, 2015

─────────────

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

─────────────

Affirmed by published opinion.  Judge Duncan wrote the opinion, in which Judge Keenan and Judge Diaz joined.

─────────────

**ARGUED:** Brian Jackson Beck, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellant.  Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.  **ON BRIEF:** Larry W. Shelton, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, Zachary T. Lee, Assistant United States Attorney, Anne H. Lippitt, Third Year Law Student, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.

─────────────

DUNCAN, Circuit Judge:

Defendant-Appellant Samuel Robert Conrad III is currently serving an eight-year term of imprisonment for a 2013 conviction. He appeals the district court's denial of his motion to dismiss commitment proceedings arising from a 2007 insanity acquittal of a separate set of offenses, as well as the district court's order to delay those proceedings until he is released from prison. The district court held that the purposes of the commitment statute, 18 U.S.C. § 4243--which provides for commitment or release based on an insanity acquittee's dangerousness--would best be served "by delaying Conrad's hearing until the end of his term of imprisonment." J.A. 164. For the reasons that follow, we affirm.

I.

In 2006, a federal grand jury indicted Appellant for possessing several firearms as a convicted felon and unlawful user of a controlled substance, under 18 U.S.C. § 922(g)(1) and (3), and for possessing an unregistered, sawed-off shotgun, under 26 U.S.C. §§ 5841, 5861(b), 5861(i), and 5871. Pursuant to a plea agreement executed in January 2007, the court found Appellant not guilty only by reason of insanity ("NGI") and, under 18 U.S.C. § 4243(a), ordered Appellant committed until eligible for release. Following a psychological examination,

2

the court held a hearing to determine Appellant's dangerousness and ordered him released subject to various conditions. Because that determination serves as the basis for this dispute's procedural posture on appeal, we first provide an overview of the relevant statutory framework as context before discussing it further.

A.

The statute at issue in this appeal, 18 U.S.C. § 4243, provides a procedural framework for the evaluation and commitment of defendants adjudicated NGI.[1] An NGI verdict renders a defendant an "acquitted person" under the statute, who "shall be committed" until "eligible for release pursuant to subsection (e)." 18 U.S.C. § 4243(a). Following a psychological examination ordered under subsection (b), a hearing to determine commitment or release "shall be conducted" within forty days of the NGI verdict. Id. § 4243(c). Subsection (d) places the burden of proof at the hearing on the acquittee. When the underlying offense involves "bodily injury," "serious damage" to another's property, or a "substantial risk of such injury or damage," the acquittee must show by clear and convincing evidence that his release "would

---

[1] The parties' plea agreement also stipulated that § 4243 et seq. would govern "all further proceedings" in the case. J.A. 16.

3

not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect."[2]  Id. § 4243(d).

If the court finds that the acquittee failed to prove by the appropriate standard that his release will not pose a substantial risk to the public, subsection (e) provides for the acquittee's indefinite commitment; if the court finds that the acquittee met his burden, the subsection allows for only unconditional release.  See id. § 4243(e); United States v. Baker, 155 F.3d 392, 395 (4th Cir. 1998).  If indefinitely committed, the acquittee may later be released--conditionally or unconditionally--under subsection (f), but only upon a recommendation by the director of the commitment facility.[3]

B.

1.

Against this statutory background, we turn to the hearing required by subsection (c) and conducted by the district court

---

[2] "With respect to any other offense," the defendant bears the burden of proof by a "preponderance of the evidence."  18 U.S.C. § 4243(d).

[3] If the director determines that the acquittee would no longer pose a substantial risk to the public if released, she "shall promptly file" her recommendation with the court.  The court "shall [then] order the discharge of the acquitted person or . . . hold a hearing . . . to determine whether [the acquittee] should be released."  18 U.S.C. § 4243(f).

4

following Appellant's 2007 NGI determination. The court determined that Appellant would not pose a substantial risk to the public due to a present mental disease or defect if released. But instead of unconditionally releasing Appellant as subsection (e) countenances, see Baker, 155 F.3d at 395, the court ordered him released subject to various conditions.[4]

In August 2008, the Commonwealth of Virginia charged Appellant with murder for the beating death of his sister-in-law. For this and other reasons, the district court revoked Appellant's conditional release in July 2010 on the recommendation of the U.S. Probation Officer. In February 2010, Appellant pleaded guilty to voluntary manslaughter for the 2008

---

[4] These conditions included that defendant receive approval from his probation officer for any changes in residence or employment; "maintain active participation in a regiment of outpatient mental health care"; take prescribed medication and comply with requirements of his medical providers; submit to drug testing; refrain from "frequent[ing] places where alcohol or illegal drugs are sold, possessed, manufactured, or distributed"; "not have in his possession . . . any actual or imitation firearm, destructive device, or other dangerous weapon"; submit to warrantless searches of his "person or property . . . for the purposes of determining compliance with his conditions of release"; "not travel outside the local area" without approval from the probation officer; "not commit a federal, state, or local crime" and "immediately notify" the probation officer if he is arrested or questioned by law enforcement; "not associate with any persons engaged in criminal activity" or "convicted of a felony" without permission from the probation officer; and "not operate a motor vehicle or obtain a driver's license" without approval from the probation officer. J.A. 20–22.

murder charge and received a sentence of four years and seven months' imprisonment with five years of supervised release.

Appellant timely appealed the revocation of his conditional release to this court. We vacated that revocation as well as the original grant of conditional release because the district court lacked authority under the applicable provision to impose the conditions. United States v. Conrad, No. 10-6962 (4th Cir. Jan. 5, 2012). While subsection (e) authorizes courts to determine dangerousness through a hearing, it allows only two forms of disposition--unconditional release or indefinite commitment; it does not authorize conditional release. The only provision of the statute that does, subsection (f), was inapplicable because it applies only if the acquittee was previously indefinitely committed, which Appellant was not, and only upon recommendation by the commitment facility director. This error only came to our attention in 2010 when Appellant appealed the revocation of his conditional release.

The effect of the order vacating both the revocation and the original grant of conditional release was to revert the status of Appellant's § 4243 proceedings to the point prior to his conditional release. Therefore, it required a new hearing under § 4243(e) to determine Appellant's dangerousness--and thus whether he should be unconditionally released or indefinitely committed. That new hearing is the subject of this appeal. It

6

has yet to take place, however, because of events surrounding Appellant's 2013 conviction and present incarceration, to which we now turn.

2.

In 2012, prior to our ordered remand, the government filed charges against Appellant for possession of a firearm by a convicted felon and conspiracy to distribute controlled substances--charges similar to those brought in 2006, which resulted in the 2007 NGI adjudication. These 2012 charges would ultimately result in Appellant's 2013 conviction and current imprisonment.

In the 2012-2013 case, the district court initially found Appellant incompetent to stand trial. It therefore stayed further action in the case before us--arising from the 2007 NGI adjudication--until Appellant became competent. The court found Appellant's competency restored several months later, in late 2012. At that point, Appellant was taken into custody to await trial on the 2012 charges. Because Appellant was in custody and therefore could not be released through a § 4243 hearing, the district court opted to await the outcome of the 2012-2013 case before conducting the § 4243 hearing yet to be held in the case before us. In 2013, Appellant pleaded guilty to possession of a firearm by a convicted felon and was sentenced to eight years'

7

imprisonment and three years' supervised release. His release from prison is scheduled for 2019. See Appellant's Br. at 2.

Appellant then moved the district court to dismiss the § 4243 commitment proceedings in the case below. He argued that, due to his imprisonment for the 2013 conviction, he could not create the "substantial risk of harm" to the public that § 4243(e) seeks to prevent through commitment. J.A. 139. He claimed that, therefore, § 4243 was no longer applicable to him. Alternatively, he argued that the district court did not have the authority to delay the hearing until after his term of imprisonment because the statute imposes specific timing provisions that do not contemplate such a delay.

The government, on the other hand, argued that Appellant's § 4243 hearing should be delayed until his release from incarceration because the purpose of § 4243 is to "ensure[] that a federal criminal defendant found not guilty by reason of insanity will not be released onto the streets." J.A. 148 (alteration in original) (quoting Frank v. United States, 506 U.S. 932, 932 (1992) (Stevens, J., respecting the denial of the petition for writ of certiorari)) (internal quotation marks omitted). Once Appellant becomes eligible for release, the government argued, "a hearing pursuant to § 4243 would be appropriate to determine his suitability for further commitment." J.A. 148.

The district court denied Appellant's motion to dismiss the commitment proceedings and ordered a delay of the proceedings until Appellant completes his current term of imprisonment, finding that such a delay would best serve the statute's purposes. This appeal followed.

## II.

Although the statutory blueprint of § 4243 is relatively straightforward, its applicability to Appellant is complicated by the fact that he is currently incarcerated for a crime unrelated to the one for which he was adjudicated NGI--a circumstance that § 4243 does not expressly contemplate. Indeed, Appellant first argues on appeal that his incarceration negates the statute's applicability to him. He reasons that his status as an inmate prevents him from qualifying as an "acquitted" person under subsection (a), posing a danger to the public under subsections (d) or (e), or being released under subsections (e) or (f). Therefore, he maintains, the district court erred by denying his motion to dismiss the commitment proceedings. Alternatively, Appellant claims that, under the statute's specific timing provisions as well as its underlying

purposes, the district court lacked the authority to delay the hearing until he completes his term of incarceration.[5]

By contrast, the government contends that, while Appellant may not pose a current threat to the public, his dangerousness is irrelevant to _whether_ to hold a § 4243(e) hearing. Rather, determining his dangerousness is the purpose of the hearing, and thus Appellant's incarceration does not bear on the statute's applicability to him. Moreover, the government argues, allowing a defendant to extricate himself from the requirements of § 4243 by committing subsequent offenses would perversely incentivize crime commission. With respect to the hearing's delay, the government argues that reasonable delay is permissible and that Congress did not intend strict enforcement of the forty-day hearing deadline imposed by § 4243(c).[6]

---

[5] Appellant also argues that holding the hearing while he is in prison would deprive him of due process. He reasons that because his incarceration prevents a showing that he poses a substantial risk to the public, there is no basis upon which he could be committed, and therefore that commitment could not bear a "reasonable relation to the purpose for which [he would be] committed," as required under _Foucha v. Louisiana_, 504 U.S. 71, 79 (1992). Appellant's Br. at 11–12; Reply Br. at 4–5. This reasoning attempts to couch what is essentially a statutory argument in due process terms. It merely reiterates the difficulty that would arise were Appellant's hearing not delayed. Because we affirm the district court's decision to delay the hearing until Appellant is released on other grounds, we need not address this argument further.

[6] The parties also assert that they disagree on the effect of their plea agreement. As noted above, _see_ _supra_ note 1, the (Continued)

10

We address these arguments in turn, determining first whether § 4243 remains applicable to Appellant, and second, whether the statute authorizes the district court to delay the § 4243 hearing until Appellant is released. As the questions before us concern statutory interpretation, we consider them de novo. See United States v. Letterlough, 63 F.3d 332, 334 (4th Cir. 1995). We conclude that the statute does not permit an NGI acquittee to nullify the statute's application by committing subsequent offenses and that delaying the hearing until Appellant is released from prison is consistent with the statutory framework of § 4243.

A.

We turn first to Appellant's argument that the district court should have dismissed his § 4243 commitment proceedings

---

parties stipulated in the plea agreement that § 4243 et seq. would govern "all further proceedings" in the case. J.A. 16. The government appears to argue that the parties' stipulation answers the question whether § 4243 should apply to Appellant. See Appellee's Br. at 8 (stating without analysis that the parties stipulated to application of § 4243). Appellant explains that his argument is not that § 4243 should not govern, but that under the terms of § 4243 itself, his proceedings should be dismissed because he does not qualify as an acquittee and cannot pose a substantial risk to the public due to his incarceration. See Reply Br. at 5. The parties therefore do not disagree that § 4243 is the statute under which this court should resolve the dispute. They appear to differ only on the effect of § 4243 on the disposition of this case. Therefore, the stipulation does not alter our analysis.

11

because his incarceration renders the statute inapplicable to him.  In addition to arguing that he does not qualify as an "acquitted person" under § 4243(a), cannot pose a "substantial risk" to the public under § 4243(d) or (e), and is not subject to "release" under § 4243(e) or (f), he offers for support United States v. Kenney, 152 F. Supp. 2d 631 (M.D. Pa. 2001). In that case, a district court held that a defendant serving a federal sentence for another crime at the time of the offense leading to his NGI adjudication was not an "acquitted person" for purposes of § 4243.

The government responds that § 4243 imposes an "unambiguous statutory mandate," Appellee's Br. at 20, that "[a] hearing shall be conducted" after an NGI adjudication, 18 U.S.C. § 4243(c).  The government also seeks to distinguish Kenney on the ground that the defendant in that case was already incarcerated when he committed the offense for which he was found NGI.

While Appellant is correct that § 4243 does not speak specifically to his particular circumstances, the statute nonetheless continues to apply.  Appellant points to no statutory provision, in § 4243 or elsewhere, that identifies any circumstance that would render § 4243 inapplicable.  And he has certainly identified no provision permitting nullification of the statute's applicability through subsequent commission of

12

crime and incarceration. Section 4243 applies on its face to NGI acquittees, and as the government observes, unambiguously requires a hearing to determine commitment or release.

Kenney does not suggest a contrary conclusion in this case. The district court's decision in Kenney does not bind us and, in any event, is analytically distinguishable. Unlike Appellant, the defendant in that case was already incarcerated when he committed the crime--assaulting a correctional officer--for which he was adjudicated NGI. Appellant was not incarcerated when he was charged in 2006 or when he was adjudicated NGI in 2007; he is incarcerated now because he committed additional offenses subsequent to his NGI acquittal. Kenney does not bear on the effect of crime commission subsequent to an NGI determination, and thus provides no support for allowing Appellant to terminate his status as subject to § 4243. We conclude that the district court did not err by denying Appellant's motion to dismiss the commitment proceedings on that ground.

B.

We next consider whether § 4243 authorizes the delay imposed by the district court and conclude that it does. We consider first the statute's specific timing provisions, and second the statute's general purposes.

13

1.

Appellant asserts that the delay imposed by the district court is impermissible because the text of § 4243(c) requires a hearing within 40 days of the NGI verdict, which, under a separate provision, may be extended only by 30 days, and only by the director of the facility to which the acquittee has been committed. See 18 U.S.C. § 4247(b).

The government counters that Congress did not mandate strict enforcement of the 40-day deadline. Rather, the statute provides for exceptions, such as the 30-day extension identified by Appellant, when it is reasonable to delay. Section 4243(b) contemplates the extension by requiring that a psychological examination and report be ordered by the court "[p]rior to the date of the hearing," and "pursuant to the provisions of section 4247(b)." Under § 4247(b), the "director of the [evaluating] facility may apply for a reasonable extension [for the evaluation] . . . not to exceed thirty days[7] . . . upon a

_____

[7] Section 4247(b) lays out the parameters for conducting psychological evaluations pursuant to § 4243 as well as to other sections governing defendants with mental disorders or competency challenges. Because it connects to several other provisions that call for hearings to determine various mental conditions, and those provisions, unlike § 4243, do not all impose hearing deadlines, this section does not operate solely within § 4243's 40-day timeframe. Instead, it provides for an evaluation timeline of 45 days, and allows the 30-day extension discussed here in addition to those 45 days.

14

showing of good cause that the additional time is necessary to observe and evaluate the defendant." The government argues that because the court may grant an extension for the examination, it may similarly grant one for the hearing. Otherwise, the court would not have the benefit of relying on the examination report at the hearing.

Significantly, both parties agree that the statute includes an implicit exception to the 40-day deadline by requiring the court to order a psychological evaluation, which, under § 4247(b), may take place after those 40 days have passed, because of the 30-day extension. Inherent in their agreement is the recognition that circumstances outside of the acquittee's control--such as a commitment facility's inadequate resources to promptly conduct the evaluation--can justify delay beyond the 40 days. And, indeed, courts have so held.

For example, in United States v. Bohe, No. 04-cr-66, 2005 WL 1026701 (D.N.D. Apr. 28, 2005), the 40-day deadline under § 4243(c) had passed due to a "backlog of psychiatric/psychological examinations at federal medical facilities," id. at *2. The defendant argued that the statute therefore required his release, but the court disagreed. The court reasoned that the evaluation would be crucial to the hearing, and moreover, that releasing the defendant before the court determined his dangerousness "would compromise the intent

of the statute." Id. Therefore, because the backlog made it "virtually impossible to comply with the forty-day time constraint set forth in 18 U.S.C. § 4243(c)," the court delayed the hearing "until such time as the appropriate . . . examination is completed." Id.

It would seem even more fitting to recognize that strict enforcement is not always possible in the context of circumstances within an acquittee's control. In United States v. Tucker, 153 F. App'x 173, 175 (4th Cir. 2005) (per curiam) (unpublished), we affirmed delay of the acquittee's § 4243(c) hearing while he served a state sentence. Such a result is the only reasonable one here, given the statute's twin goals, discussed in detail below, of both protecting the acquittee against prolonged unnecessary detention, and the public against premature release.

Appellant's contention that circumstances beyond the court's control, but within an acquittee's control--such as subsequent commission of additional crimes, a guilty plea, and incarceration--could prevent the court from holding the required hearing once the 40 days have elapsed is untenable. Even though the hearing, if delayed until Appellant completes his sentence,

16

will occur approximately 12 years after the NGI adjudication,[8] the delay is attributable to Appellant's commission of crimes subsequent to his NGI adjudication. Because Appellant has been the principal architect of the delay he faces, and such delay is reasonable under the statute when the acquittee is serving a term of incarceration, we conclude that the district court did not err in delaying the proceeding here.

2.

We conclude that the statute's purposes support the district court's decision to delay the § 4243 hearing until Appellant's release from prison as well. Appellant contends that the timing provisions of § 4243 ensure prompt access to mental health care following an NGI verdict and immediate release upon recovery. Appellant characterizes the failure to provide him with prompt rather than delayed access to such care as a deprivation of liberty without due process.[9]

---

[8] As discussed above, Appellant was adjudicated NGI in 2007, and his release from his current incarceration is scheduled for 2019.

[9] The Supreme Court has said that the purposes of <u>commitment</u> following an insanity acquittal include treatment of the acquittee's mental disorder. See <u>Jones v. United States</u>, 463 U.S. 354, 368 (1983). As we discuss below, the purposes of a § 4243 <u>hearing</u>, by contrast, are to protect (1) an acquittee's right to release once he has recovered or become no longer dangerous, and (2) the public's right to protection from the acquittee's potential dangerousness in the meantime. Because this appeal concerns whether and when to hold Appellant's § 4243 (Continued)

17

The government responds that the timing provisions limit the court's power to confine an acquittee before the hearing and ensure that the hearing will be held close in time to when the acquittee would otherwise be released from confinement. The government argues that the former purpose is not implicated when the acquittee is incarcerated for another offense, and that the latter purpose counsels in favor of delaying the hearing until it can be held closer in time to when Appellant would actually be released.

The purpose of a hearing to determine commitment or release following an insanity acquittal is to determine whether the acquittee is eligible for release because he has "recovered his sanity or is no longer dangerous" to the public. Jones v. United States, 463 U.S. 354, 368 (1983). Section 4243, in providing for that hearing, therefore guarantees two concomitant rights: on the one hand, the right of the acquittee to release once his mental disorder no longer makes him a danger to the public; and on the other, the right of the public at large to protection from the acquittee's potential dangerousness. We find that delaying Appellant's hearing until he completes his term of incarceration serves both purposes.

---

hearing, a threshold step to determining whether he should be committed, this argument is premature.

18

First, delay serves the purpose of ensuring Appellant's right to release once he is found recovered or not dangerous. Appellant is not eligible for release while he remains incarcerated for the 2013 conviction. His current incarceration admits of no flexibility; it would not yield to allow release if Appellant were now deemed not to pose a danger to the public. Therefore, the statutory entitlement to release cannot flow to Appellant until he is no longer in prison. By contrast, delaying his hearing until he has served his term of incarceration would allow Appellant's right to release--again, if the court determines that he has recovered his sanity or does not pose a substantial risk to the public--to come to fruition.

Second, delay serves the purpose of protecting the public from Appellant's potential dangerousness. Appellant cannot pose a danger to the public at large while he remains incarcerated. The public's statutory right to protection, therefore, does not arise until Appellant would otherwise be released from prison. Moreover, whether Appellant would <u>currently</u> pose a danger to the public does not relate to the purpose of protecting the public when it will matter: in 2019, when Appellant completes his current term of incarceration. Delaying the hearing until then, therefore, ensures the public's right to protection.

For these reasons, we find that the district court's decision to delay the hearing until after Appellant completes

his prison term does not run counter to the statute's purposes, but rather furthers them.

## III.

For the foregoing reasons, the district court's denial of Appellant's motion to dismiss his commitment proceedings under 18 U.S.C. § 4243 and its order that the proceedings be delayed while Appellant completes his current term of imprisonment are

AFFIRMED.